UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE ELAINE COX,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | No. 2:15-cv-2221 AC<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.[2]  For the reasons

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.  See https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 15, 2017).  She is therefore substituted as the defendant in this action.  See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
(continued…)

1

that follow, plaintiff's motion for summary judgment will be granted, and defendant's cross-motion for summary judgment will be denied. The matter will be remanded to the Commissioner for the payment of benefits to plaintiff.

## I.   PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on September 12, 2012. Administrative Record ("AR") 15 (Decision).[3] The disability onset date for both was alleged to be July 30, 2009. Id. The applications were disapproved initially and on reconsideration. Id. On August 26, 2014, ALJ Carol L. Buck presided over the hearing on plaintiff's challenge to the disapprovals. AR 51-85 (transcript). Plaintiff was present and testified at the hearing. She was represented at the hearing by attorney Jessica Cook. Jim Van Eck, a vocational expert, and "Mr. Lang," plaintiff's "peer partner," also testified at the hearing.

On October 27, 2014, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 27 (decision), 29-33 (exhibit list). On August 26, 2015, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 2-7 (decision, additional exhibit list and order). On January 28, 2016 (after this lawsuit was filed), the Appeals Council wrote to plaintiff stating that it had reviewed additional evidence that plaintiff had submitted after the Appeals Council decision, and that it had concluded "that no change in the prior action is warranted." AR 1.

Plaintiff filed this action on October 26, 2015. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 5, 7. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 11 (plaintiff's summary judgment motion), 12

---

Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

[3] The AR is electronically filed at ECF Nos. 9-3 to 9-12 (AR 1-729). The paper version is filed with the Clerk of the Court. See ECF No. 9.

(Commissioner's summary judgment motion), 13 (plaintiff's reply).

## II.   FACTUAL BACKGROUND

Plaintiff was born on December 10, 1960.  The ALJ considered plaintiff to be "an individual closely approaching advanced age, on the alleged disability date …."  AR 26.[4]  Plaintiff has at least a high school education, and can communicate in English.  AR 26.

## III.   LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited."  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision that a claimant is not disabled will be upheld "unless it contains legal error or is not supported by substantial evidence."  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  Garrison, 759 F.3d at 1009.  "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

The court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Rounds v. Commissioner Social Security Admin., 807 F.3d 996, 1002 (9th Cir. 2015); Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016) ("[w]e cannot affirm … "simply by isolating a specific quantum of supporting evidence").

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony,

---

[4] In fact, plaintiff was, at age 48, a "younger person" on July 30, 2009, the alleged disability onset date.  See 20 C.F.R. §§ 404.1563(c), 416.963(c).  However plaintiff does not challenge the misclassification on this appeal, and in any event, the error favors plaintiff, so it is harmless.  When plaintiff applied for benefits on September 12, 2012, she was, at age 51, a person "closely approaching advanced age," and she was still in that category when the ALJ's decision was rendered.  See 20 C.F.R. §§ 404.1563(d), 416.963(d).

3

and resolve ambiguities in the record." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Thus, in reviewing the Commissioner's decision, this court does not substitute its discretion for that of the Commissioner. See Brown-Hunter, 806 F.3d at 492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency") (internal quotation marks omitted).

The court may review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination …." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.   THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since July 30, 2009, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. [Step 2] The claimant has the following severe impairments: fibromyalgia, cervical strain, peptic ulcer disease, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5. [Residual Functional Capacity]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently.  She has no limitations in walking, standing, and sitting, except she can only occasionally walk on uneven terrain.  She can frequently bend, kneel, stoop, crawl, and crouch.  She can occasionally climb ladders.  She can occasionally work with heights.  Work is limited to simple, repetitive tasks, with only limited public contact.  Limited contact is up to one third of the day, and the contact during the one third is superficial, which includes phone contact.

    6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    7. [Age] The claimant was born on December 10, 1960 and was 48 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

    8. [Education] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    9. [Transferability] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpar1 P, Appendix 2).

    10. [Step 5] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 15-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 27.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by giving little or no weight to the mental function assessments of plaintiff's treating psychiatrist, Kathleen Marshall, M.D.  Dr. Marshall initially assessed and treated plaintiff on October 16, 2013.  AR 687-90 (Exh. 16F).  After conducting a "Mental Status Exam" of plaintiff, Dr. Marshall diagnosed plaintiff with "Dysthymic Disorder"

////

and "Borderline Personality Disorder," and assessed plaintiff's GAF at 51.[5]  AR 689, 690.  Dr. Marshall then treated plaintiff at regular intervals, starting on (or about) January 15, 2014 (AR 686), and continuing March 10, 2014 (AR 685), May 5, 2014 (AR 683), July 14, 2014 (AR 717) (Exh. 18F), and August 20, 2014 (AR 715).  At each of these subsequent treatment sessions, Dr. Marshall again conducted a Mental Status Exam ("MSE").

Marsha Brown, Psy.D., performed a "comprehensive mental status evaluation" of plaintiff on January 29, 2013.  AR 571-75.  Dr. Brown diagnosed plaintiff with "Major Depressive Disorder, recurrent," and "Anxiety Disorder Not Otherwise specified," and rated plaintiff's GAF at 55.  AR 574.

A. Limitations

On August 29, 2014, Dr. Marshall completed a "Mental Impairment Questionnaire" about plaintiff.  AR 721-25 (Exh. 19F).  Dr. Brown gave a "functional assessment" of plaintiff at the end of her evaluation.  AR 574-75.  The ALJ stated that he gave both doctors' opinions (in relevant part) "little weight."  AR 25.  In fact, the ALJ rejected the treating and examining doctors' opinions, in pertinent part, by failing to include the relevant limitations they identified into the residual functional capacity finding ("RFC").

Dr. Marshall opined that, on average, plaintiff's impairments or treatments for them would

---

[5]

> A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. . . . Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. . . . GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects.  See, e.g., Titles II & XVI: Capability to Do Other Work – The Medical Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A. 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.").

Garrison, 759 F.3d at 1003 n.4 (some internal quotation marks omitted).  "[A] GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'"  Garrison, 759 F.3d at 1003 n.4.

1  cause her to be absent from work "More than three times per month." AR 725.[6] The vocational
2  expert testified that if plaintiff missed three days of work per month, there would be "no work"
3  available to her. AR 84. This limitation was not included in the residual functional capacity.
4     Dr. Marshall opined that plaintiff has a "Marked" limitation in her abilities to "Interact
5  appropriately with the public" and "Respond appropriately to workplace changes." Dr. Marshall
6  concluded that the limitations would "constantly interfere" with plaintiff's ability to carry out
7  those functions, and would persist for "more than 2/3 of an 8-hr. workday," that is, possibly all
8  day, but at least 5 hours. AR 724.[7] This limitation was not included in the ALJ's RFC, because
9  under the RFC, plaintiff would be able to interact with the public "up to one third of the day."
10 AR 19.
11    Dr. Marshall opined that plaintiff has "Moderate-to-marked" limitations in her abilities to
12 "Get along with coworkers or peers without distracting them." Dr. Marshall concluded that the
13 limitation would "frequently interfere" with plaintiff's ability to carry out those functions, and
14 would persist for "1/3 to 2/3 of an 8-hr. workday." AR 724.[8] The vocational expert testified that
15 these limitations would result in a "Probably 75, 80 percent reduction in the numbers" of jobs
16 available to plaintiff. These limitations were not included in the ALJ's residual functional
17 capacity.
18    Dr. Marshall opined that plaintiff has "Moderate-to-marked" limitations in her abilities to
19 "Maintain attention and concentration for extended periods," "Perform activities within a
20 schedule and consistently be punctual," "Sustain ordinary routine without supervision,"
21 "Complete a workday without interruptions from psychological symptoms," and "Perform at a
22 consistent pace without reset periods of unreasonable length or frequency." AR 724.[9] Dr.

---

[6] Dr. Brown did not specify any number of days plaintiff would miss work, but did confirm that plaintiff "[h]as a fair ability to maintain regular attendance in the workplace as mental health and pain symptoms may limit ability for regular attendance." AR 575.
[7] Dr. Brown was not as specific, but confirmed that plaintiff had a "fair" ability to interact with the public, as "[m]ental health symptoms of anxiety and depression may limit ability." AR 575.
[8] Dr. Brown confirms that plaintiff has a "fair" ability to "interact with coworkers," as "[m]ental health symptoms of anxiety and depression may limit ability." AR 575.
[9] Dr. Brown confirms that plaintiff "[h]as a poor ability to complete a normal workday or (continued…)

8

Marshall concluded that the limitations would "frequently interfere" with plaintiff's ability to carry out those functions, and would persist for "1/3 to 2/3 of an 8-hr. workday." AR 724. One-third of an 8-hr day is over 2.5 hours. The vocational expert testified that if plaintiff were "off task up to one hour a day total," there would be "no" jobs available to plaintiff. AR 82. These limitations were not included in the ALJ's RFC.

### B. ALJ rejects Dr. Marshall's opinion[10]

The ALJ rejected Dr. Marshall's opinions for several stated reasons. However, she failed to provide clear and convincing reasons, or even specific and legitimate reasons, for rejecting Dr. Marshall's opinions.[11]

#### 1. Treatment history

The ALJ stated that Dr. Marshall's "treatment history has been relatively brief and infrequent." AR 25. However, as noted above, Dr. Marshall saw and treated plaintiff at regular intervals, every other month, from October 2013 through at least August 2014 (the month of the ALJ hearing). The ALJ does not explain what is brief or infrequent about the treatments. In any event, the ALJ also fails to explain why, in light of her stated views on "brief and infrequent" treatments, she accepted the opinions of the state agency physicians, who never saw, examined or treated plaintiff.

In her summary judgment motion, the Commissioner cites authority for the unremarkable proposition that the weight to be given a treating physician's opinion depends on the duration and frequency of the treating relationship. ECF No. 12 at 10, citing 20 CFR § 404.1527(c)(2)(i)[12]

---

workweek without interruptions from a psychiatric condition as mental health and pain symptoms are likely to impact pace and persistence at work." AR 575.

[10] The ALJ also rejected Dr. Brown's opinions. However, as discussed below, her rejection of Dr. Marshall's opinions was, by itself, reversible error requiring reversal for payment of fees. Accordingly, the court does not address the rejection of Dr. Brown's opinions, or plaintiff's other assignments of error.

[11] "In order to reject an examining physician's opinion, the ALJ has to give clear and convincing reasons.... Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Hill v. Astrue, 698 F.3d 1153, 1159-60 (9th Cir. 2012) (internal quotation marks omitted).

[12] The Commissioner cites "20 CFR § 404.1527(d)," but the pertinent language was moved to 20 (continued…)

9

1    ("[g]enerally, the longer a treating source has treated you and the more times you have been seen
2    by a treating source, the more weight we will give to the source's medical opinion").  However,
3    the Commissioner cites no binding authority for the proposition that a psychiatrist seeing a patient
4    at regular intervals over the course of a year is lacking frequency or duration of treatment.[13]

5    　　　　To the contrary, the rules state that a treating relationship can be established so long as the
6    treating visits are consistent with the type of treatment, and can be as infrequent as two times per
7    year.  20 C.F.R. § 404.1502 ("[w]e may consider an acceptable medical source who has treated or
8    evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating
9    source if the nature and frequency of the treatment or evaluation is typical for your condition(s)").
10   The Commissioner does not explain why it makes any sense, or could be within the meaning of
11   the regulations, to accept a doctor as a treating source even though she only sees the patient twice
12   a year, but to then reject the opinions offered on the grounds that the doctor only sees the patient
13   twice a year.

14   　　　　　　　　2.  Psychological testing, reliance on subjective complaints

15   　　　　According to the ALJ, "no psychological testing was performed in order to support her
16   assessment, which indicates that Dr. Marshall likely relied on the claimant's subjective
17   complaints."  AR 25.  However, the absence of formal "psychological testing" is not pertinent
18   where, as here, the treating psychiatrist performed mental status examinations every time she saw

19   _____
20   C.F.R. § 404.1527(c) in 2012.  How We Collect and Consider Evidence of Disability, 77 Fed.
     Reg. 10,651, 10656 (Feb. 23, 2012) (section 404.1527 amended so as to "[r]edesignate
21   paragraphs (d) through (f) as (c) through (e)").
     [13] The Commissioner cites Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1041 (9th Cir.
22   2003) (addressing the issue of whether a plaintiff's psychiatrist should be considered to be a
23   "treating" source, a matter not in issue here); and Orn v. Astrue, 495 F.3d 625, 634 (9th
     Cir. 2007) (reversing the Commissioner's decision for improperly disregarding the opinions of
24   the treating physicians).  Neither case supports the Commissioner's argument that the ALJ
     properly rejected Dr. Marshall's opinions.  In the cited district court case, Helwig v. Colvin, 2013
25   WL 4666335 at *5, 2013 U.S. Dist. LEXIS 124750 at *13 (C.D. Cal. 2013), while the court states
     that the psychiatrist saw the plaintiff "for 30 minutes every 8 weeks," it does not state how long
26   the treating relationship lasted.  In addition, it does not give an explanation, nor cite any authority,
27   for why the cited frequency warranted rejecting the opinion.  This court respectfully disagrees
     with the view that the cited frequency warrants rejecting a treating psychiatrist's opinion.
28

and treated the plaintiff.  See Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1199-200 (9th Cir. 2008) (reversing ALJ decision and ordering payment of benefits where ALJ improperly rejected the opinion of the examining psychiatrist whose opinions were based on his mental status examination).

Moreover, there is no evidence in the record to suggest that Dr. Marshall relied on plaintiff's subjective complaints, rather than upon Dr. Marshall's own mental status examination. Dr. Marshall naturally included plaintiff's subjective complaints in her progress notes, but this practice does not nullify or degrade Dr. Marshall's own clinical observations of plaintiff.  See Ryan, 528 F.3d at 1199-200 ("Dr. Randhawa did, unsurprisingly, record in a section of his evaluation entitled 'History of Present Illness,' the symptoms relayed to him by Ryan, including Ryan's inability to interact with others or make decisions without experiencing significant anxiety.  But in the 'Mental Status Examination' portion of the exam he also recorded several of his own clinical observations of Ryan.").

### 3. Absence from work

The ALJ stated that there was "no support or evidence that the claimant would likely be absent from work more than three times per month."  AR 25.  The Commissioner argues that Dr. Marshall's statement to that effect was made on a "check-box form," and offered no "objective evidence."  ECF No. 12 at 11.  In fact, Dr. Marshall examined plaintiff regularly for ten months, and diagnosed her with persistent depression ("dysthemia") and "Borderline Personality Disorder."  Dr. Marshall's observations and mental status examinations, as recorded in her progress notes, found that plaintiff was "detached," had an "inability to tolerate intense emotions," and engaged in self-mutilation.  If the ALJ believed that these diagnoses and observations were insufficient to support Dr. Marshall's conclusion about plaintiff's anticipated absences, the ALJ should have explained why, but failed to do so.[14]

---

[14] The two cases the Commissioner cites in support of her "check-box" argument are not applicable here.  In both Batson v. Commissioner of Social Security, 359 F.3d 1190, 1195 (9th Cir. 2004) and Young v. Heckler, 803 F.2d 963, 967-68 (9th Cir. 1986), the rejected physician's reports were check-off boxes without more.  There were no supporting clinical findings.  Here, Dr. Marshall's Mental Impairment Questionnaire is supported by clinical findings in the form of (continued…)

1 The ALJ also states, without explanation, that the mental status exams were
2 "unremarkable." AR 25. The Commissioner expands on this statement by citing portions of the
3 record where plaintiff's mental status exams were, indeed, unremarkable. ECF No. 12 at 12.
4 These mental status exams were carried out by Dr. David Lee, apparently a general practitioner,
5 who was treating plaintiff for pink eye (AR 403, 484-85), a viral infection (AR 414), sinus
6 congestion (AR 454), sinusitis (AR 456), and a viral infection (AR 488). The Commissioner
7 offers no explanation for why these observations, made by a doctor who was only treating
8 plaintiff for ordinary physical maladies, should cause the court to ignore the formal mental status
9 exams given by her treating psychiatrist and an examining psychologist, both of whom were
10 specialists who were specifically examining plaintiff to see if her mental impairments had an
11 effect on her functioning.[15] See 20 C.F.R. §§ 494,1527(c)(5) ("[w]e generally give more weight
12 to the opinion of a specialist about medical issues related to his or her area of specialty than to the
13 opinion of a source who is not a specialist"), 416.927(c)(5) (same).
14 The Commissioner's one citation to plaintiff's treating or examining doctors is to
15 Dr. Brown's mental status exam, where the Commissioner cherry-picks Dr. Brown's finding on
16 "Thought Content," which is "Unremarkable, hallucinations denied." ECF No. 12 at 12 (citing
17 AR 574). It is not clear what conclusion the Commissioner is asking the court to draw from this
18 one item which appears to say nothing more than that plaintiff does not hallucinate. Dr. Brown's
19 mental status exam also states that plaintiff's "Mood" is "Depressed," and that her "Affect" is
20 "Sad and tearful (when discussing family)." AR 5474. The Commissioner's reference to one
21 item in the mental status exam does not show that the exam is "unremarkable."

22

---

23 mental status exams.
[15] The Commissioner also refers to the "unremarkable" observations by Hung Ho, MD and
24 "Randau Colin, MedStd." ECF No. 12 at 12 (citing AR 461, 463). However, both of the cited
observations are of plaintiff's "General appearance," and do not even purport to be mental status
25 exams. AR 461, 463. Also, they are made in the course of treating plaintiff for routine physical
maladies. It seems inappropriate for the Commissioner to argue that the court should reject
26 formal mental status exams because they do not constitute "psychological testing" (ECF No. 12
27 at 11), but to then argue that the court should rely upon observations that are neither
psychological testing nor mental status exams.
28

12

### 4. Mental health treatment

The ALJ stated that "Dr. Marshall's opinion is overly restrictive and is inconsistent with the claimant's … minimal mental health treatment." AR 25. The ALJ does not explain what she means by "minimal" treatment. Plaintiff was under the regular care of a psychiatrist, exactly the type of treatment one would expect for mental disorders. In addition, plaintiff was prescribed Ativan, Cymbalta (discontinued because plaintiff could not tolerate it), Celexa (discontinued because plaintiff could not tolerate it), and Lamictal, all specifically to address her mental impairments. The Commissioner offers no explanation, or authority, for why this treatment is "minimal," nor any examples of what type of treatment would not be minimal for plaintiff's conditions.

### 5. Activities of daily living

The ALJ stated that Dr. Marshall's opinion is inconsistent with plaintiff's "good activities of daily living," which the ALJ identifies as taking care of her two cats, cooking, cleaning, watching television, grocery shopping, and going to her doctor appointments." AR 25. Even if plaintiff were proficient at these activities, they do not contradict the opinions of Drs. Marshall and Brown regarding plaintiff's functional limitations.

First, the Commissioner does not explain why it is proper for the ALJ to cherry-pick a few items of activities of daily living from plaintiff's Function Report and testimony to demonstrate that plaintiff can work. See Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ([d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity"). Second, the items the ALJ identifies do not have much, if anything, to do with plaintiff's ability to work an 8-hour day regularly, and without significant interruptions and absences. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) ("[w]e agree with Orn that reading, watching television, and coloring in coloring books are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace"). For example, plaintiff's ability to take care of her cats involves her feeding and "water[ing]" them, and then lying down on the couch "all day," because of her depression. AR 290. Similarly, plaintiff's once-per-week attempt at light housekeeping and once-per-week

1    grocery shopping do not contradict Dr. Marshall's opinions that, for example, plaintiff would

2    miss 3 days of work every month, and would be off-task for 2.5 hours every day.  Third, even the

3    activities the ALJ cites as part of plaintiff's "good activities of daily living" are problematic.  For

4    example, the ALJ states that plaintiff watches television.  Apart from the fact that this activity has

5    no apparent connection with plaintiff's ability to work, see Orn, 495 F.3d at 639, even watching

6    television "can get [plaintiff] very stressed …."  AR 293.

7         The ALJ also used these "good activities of daily living" to find plaintiff "not fully

8    credible."  AR 26.  However, a plaintiff's activities of daily living can affect her credibility only

9    if the ALJ finds that those activities are transferable to a work setting.  Orn, 495 F.3d at 639

10   ("[t]he ALJ must make specific findings relating to [the daily] activities and their transferability

11   to conclude that a claimant's daily activities warrant an adverse credibility determination").  The

12   ALJ made no such findings here, nor would such a finding appear to be possible here.

13                              VI.    REMAND

14        For the reasons stated above, the ALJ erred by rejecting the opinions of plaintiff's treating

15   psychiatrist, Dr. Marshall.  The reasons given for rejecting her opinions were neither legitimate

16   nor convincing.

17        The court is authorized "to 'revers[e] the decision of the Commissioner of Social Security,

18   with or without remanding the cause for a rehearing.'"  Treichler v. Comm'r of Soc. Sec. Admin.,

19   775 F.3d 1090, 1099 (9th Cir. 2014).  "[W]here the record has been developed fully and further

20   administrative proceedings would serve no useful purpose, the district court should remand for an

21   immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

22        More specifically, the district court should credit evidence that was rejected during the

23   administrative process and remand for an immediate award of benefits if (1) the ALJ failed to

24   provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues

25   that must be resolved before a determination of disability can be made; and (3) it is clear from the

26   record that the ALJ would be required to find the claimant disabled were such evidence credited.

27   Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert.

28   denied, 531 U.S. 1038 (2000)).

A. Outstanding issues

Under the second step in the remand analysis,[16] the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (internal quotation marks omitted). This step is satisfied here.

First, unlike the situation in Dominguez, there is no internal conflict or ambiguity in the treating physician's opinion or the limitations contained in it. To the contrary, as discussed above, Dr. Marshall's treatment notes fully support the functional limitations she found.

Second, there is no conflict to be resolved in the remainder of the administrative record. Dr. Marshall's listing of functional limitations are fully consistent with and supported by plaintiff's treatment history and the medical opinions of Dr. Brown.

The agency reviewing doctors' opinions do conflict with Dr. Marshall's. See AR 98. However, those doctors rejected Dr. Marshall's opinions for the same reason rejected above – that is, it "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." AR 97-98. The other reasons for the reviewing doctors' rejection is their different conclusions based upon the same medical evidence considered by Dr. Marshall. However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn, 495 F.3d at 632. This would appear to be equally true when it is a reviewing agency doctor – who has never seen, examined or treated the plaintiff – who reaches a different conclusion based upon the same clinical findings as were considered by the treating and examining doctors.

B. Crediting Dr. Marshall's opinion as true

Under the third step, this court "must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as

---

[16] As discussed above, the first step is satisfied because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Marshall's opinion.

1 true." Dominguez, 808 F.3d at 407 (internal quotation marks omitted).  The Vocational Expert
2 ("VE") confirmed that if, as Dr. Marshall opined, plaintiff would miss three days of work per
3 month, there would be "no work" available to her.  The VE also confirmed that if, as Dr. Marshall
4 opined, plaintiff would be off task up to one hour a day total, there would be "no" jobs available
5 to plaintiff.[17]  Accordingly, if the ALJ had credited Dr. Marshall's opinion, she would have to
6 find that because of plaintiff's mental impairments there were no jobs available to her, and
7 therefore that she was disabled.

    C.  Discretion

9     Where the above steps are satisfied, this court must exercise its discretion in determining
10 whether to remand for further proceedings, or for the immediate calculation and award of
11 benefits.  Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if
12 discredited evidence were credited as true, "the district court may exercise its discretion to
13 remand the case for an award of benefits").  If, despite satisfying the above steps, the "record as a
14 whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of
15 the Social Security Act," the court should remand for further proceedings.  Burrell v. Colvin, 775
16 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).  However, the court would be
17 "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is
18 satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled."
19 Garrison, 759 F.3d at 1021.
20     Here, the court finds no reason to doubt that the plaintiff is disabled within the meaning of
21 the Act.

## VII.  CONCLUSION

23     For the reasons set forth above, IT IS HEREBY ORDERED that:
24     1.  Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;
25     2.  The Commissioner's cross-motion for summary judgment (ECF No. 12), is DENIED;
26 ////

---

[17] In fact, Dr. Marshall opined that plaintiff would be off task over 2.5 hours per day.

1       3.  This matter is REMANDED to the Commissioner for the immediate calculation and
2  payment of benefits to plaintiff; and
3       4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.
4  DATED: February 22, 2017

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE